FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2012 DEC 21  P 4: 35

CLERK'S OFFICE
AT BALTIMORE

BY /s/ ............ TY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ALEXANDER YOUNG,

　　　*Plaintiff,*

　　　v.　　　　　　　　　　　　　　　Civil Action No.: ELH-11-01562

THIEBLOT RYAN, P.A.,

　　　*Defendant.*

## MEMORANDUM OPINION

This case arises out of attempts by defendant Thieblot Ryan P.A. ("Thieblot Ryan"), a Baltimore law firm, to collect a debt allegedly owed to Bank of America by plaintiff, Alexander Young, in connection with his overdrawn checking account.  On June 8, 2011, Young filed suit against Thieblot Ryan under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.*[1]  *See* Compl. (ECF 1).  In his Amended Complaint (ECF 9), Young alleges that Thieblot Ryan falsely represented the amount, character, and status of his alleged debt in a collection letter and in a suit filed by defendant in the District Court of Maryland for Baltimore City to collect the debt.

Defendant has moved for summary judgment" ("Motion," ECF 33), supported by a legal memorandum ("Memo," ECF 33-2).[2]  It argues that Young's claims are barred by the FDCPA's statute of limitations, which provides that claims must be brought "within one year from the date on which the violation occurs."  15 U.S.C. § 1692k(d).  Alternatively, defendant claims that it is

---

[1] Jurisdiction in this case is conferred by 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

[2] Defendant previously filed a motion to dismiss (ECF 12), which I denied.  *See* ECF 16, 17.

protected by the bona fide error defense under 15 U.S.C. § 1692k(c), which provides: "A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows, by a preponderance of evidence, that the violation was not intentional and resulted from a bona fide error, notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."

Plaintiff filed a combined opposition to the Motion and a cross motion for summary judgment ("Cross-Motion"). *See* ECF 37. Defendant filed a combined reply to plaintiff's opposition and an opposition to plaintiff's Cross-Motion ("Reply") (ECF 38).[3] As the motions have been fully briefed, the Court rules now pursuant to Local Rule 105.6, no hearing being necessary.

### Factual Background[4]

On June 1, 2010, Thieblot Ryan mailed a "collection letter" to Young, dated May 30, 2010, at 4010 Wilsby Avenue, Baltimore, Maryland 21218-1240.[5] Compl. ¶¶ 12-13; Cross-Motion Exh. 4 (ECF 37-4) ("Plaintiff's First Request for Admissions" and Exhibit 1 thereto). The letter indicated that plaintiff owed Bank of America ("BoA") a debt in the amount of

---

[3] The time for plaintiff to reply to the opposition to the Cross-Motion has long since expired. *See* Local Rule 105.2(c) (permitting replies by both parties on cross-motions for summary judgment).

[4] For the purpose of the Motions, the relevant facts are largely undisputed.

[5] Although the letter was dated May 30, 2010, it was postmarked June 1, 2010. *See* Cross-Motion Exh. 4 (ECF 37-4) ("Plaintiff's First Request for Admissions" and attached exhibits). The parties appear to have agreed that it was mailed on June 1, 2010. *See id.* ¶ 1 ("1. Admit that on or about May 30, 2010, Defendant wrote a letter and on June 1, 2010 mailed the letter to Mr. Young attempting to collect from him an alleged debt in the sum of $3,958.48."); *see* Defendant's Response to Plaintiff's First Request for Admissions, Cross-Motion Exh. 6 (ECF 37-6) ("Defendant admits to the facts contained in paragraph 1 of Plaintiff's First Request for Admissions."). Plaintiff's attempt to dispute the mailing date in his Cross-Motion is addressed more fully, *infra*.

$3,958.48.  Compl. ¶¶ 12-13; Collection Letter (ECF 37-1).  In the letter, Thieblot Ryan

identified itself as a "debt collector," and disclosed that it was "attempting to collect a debt."  *See*

Collection Letter.  Because Young had moved, the letter was forwarded to him at his new

address, *see* Plaintiff's Responses to Defendant's Interrogatories, MSJ Exh. 1 ¶¶ 1-2 (listing

addresses) (ECF 33-3), and he first read it on June 15, 2010.[6]  *Id.* ¶ 9.

On July 20, 2010, not having received any payment on or notice of dispute as to the

asserted debt, Thieblot Ryan filed a complaint against Young in the District Court of Maryland

for Baltimore City (the "State Complaint"), seeking to recover $3,936.48.[7]  Compl. ¶ 7; Affidavit

of Bruce R. Miller, MSJ Exh. 2 ("Miller Aff.," ECF 33-4) ¶¶ 13, 16-17.  In support of the State

Complaint, Thieblot Ryan attached the Affidavit of Cristina Ferrer ("Ferrer Affidavit"),

"custodian of Records for Bank of America," affirming her personal knowledge as to the basis

for the claim against Young, and verifying that the sum of Young's alleged debt was $3,936.48.

*See* Miller Aff. ¶ 17 ("A copy of [the State Complaint] and all of the supporting documentation

filed with it is attached hereto as Exhibit No. 4."); State Complaint, Miller Aff. Exh. 4 (ECF 33-

---

[6] In the Amended Complaint, Young alleged that the Collection Letter was forwarded on July 8, 2010.  The exhibit offered in support of that allegation is an unidentified envelope sent from an anonymous address in Washington state, "P.O. Box 9004, Renton, WA 98057-9004." *See* Am. Compl., Exh. 1 (ECF 9).  Notably, that is not Thieblot Ryan's address, and bears no resemblance to the envelope used by Thieblot Ryan, attached to Young's original Complaint. *See* ECF 1-1.

[7] The District Court for Baltimore City (District 1) is a Maryland state court.  A copy of the State Complaint and the supporting documents were attached to plaintiff's initial complaint in the instant case, *see* ECF 1-2, but were not appended to the Amended Complaint.  However, the State Complaint is included as Exhibit 4 to the Affidavit of Bruce Miller, Esquire, an attorney with defendant (ECF 33-8), and its contents are not in dispute.

I note that the amount sought in the State collection case was about $22.00 less than the amount specified in the Collection Letter mailed on June 1, 2010.  The State suit did not include prejudgment interest, per BoA's instruction.  *See* Miller Aff. ¶ 15.

8). Thieblot Ryan also attached Young's request to open a Personal Signature Card account, dated March 8, 2010; account statements for the period beginning March 16, 2010 and ending April 14, 2010; and a copy of BoA's "Deposit Agreement and Disclosures." *See* State Complaint. The statements covering the period of March 16, 2010 to April 14, 2010, reflect the following account activity:

| Date Posted | Amount ($) | Resulting Balances ($) | Transactions |
|---|---|---|---|
| 03-18 | 1,880 - | 4,041.48 - | Claims Processing Transaction . . . . |
| 03-19 | 35.00 - | 4,076.48 - | Extended Overdrawn Balance Charge |
| 03-25 | 140.00 + | 3,936.48 - | Refund/Reverse Fee(S) |
| 03-31 | 3,936.48 + | 0.00 | Force Closed Account . . . . |

In connection with its Motion, Thieblot Ryan has submitted the affidavit of Bruce R. Miller, a partner at the law firm of Thieblot Ryan. *See* Miller Aff. ¶¶ 2-3. According to Miller, Thieblot Ryan has represented Bank of America "in the collection of outstanding account overdrafts since 2001." *Id.* ¶ 5. Miller avers that on May 27, 2010, BoA, through Gamache & Myers, PC, a St. Louis law firm, referred Young's account to Thieblot Ryan to collect an account overdraft balance on his BoA Personal Signature Card of $3,396.48. *Id.* ¶ 7; Thieblot Ryan Answers to Interrogatories, Interrogatory No. 7 (ECF 37-11); *see* ECF 33-5 (March 8, 2010 Personal Signature Card request signed by Alexander Young). Included in the referral were Young's account statements for the period beginning March 8, 2010, the date that Young opened his Personal Signature Card account, and ending April 14, 2010. *Id.* ¶ 8. The account statement for the period of March 16, 2010 through April 14, 2010, showed an overdraft of $3,396.48, due as of March 25, 2010, and continuing through April 14, 2010. *See* ECF 33-6 (account statement of April 14, 2010).

- 4 -

According to Young, BoA's Check Fraud Claims department had mailed him a letter on May 25, 2010, purportedly crediting his account in the amount of $3,150; a copy of the letter is attached to the Cross-Motion. *See* Cross-Motion Exhs. 2, 3 (ECF 37-2, 37-3); Am. Compl. ¶ 15. The letter, signed by Ashley Herring of "Check Fraud Claims," stated: "I am pleased to inform you that the research has been completed on the fraudulent activity you recently reported to Bank of America.  Your claim has been honored.  Listed below is an itemization of the amount we deposited. . . .  Total claim paid: $3,150.00."  *See* ECF 37-2, 37-3.  Young has not offered any description of the "fraudulent activity" identified in the letter.  Nor did he discuss the circumstances surrounding his discovery and reporting of that activity, or explain the relationship between these claims and the account activity depicted in his April 14, 2010 account statement, as displayed above.

The docket sheet for the State Complaint shows that on October 14, 2011, some four months after Young initiated the instant suit, defendant sought to dismiss the State case.[8]  On November 4, 2011, the State Complaint was dismissed.  *See* Cross-Motion Exhs. 4, 12 (ECF 37-4, 37-12).

### Contentions

Young alleges that defendant committed several violations of the FDCPA.  First, Young contends that defendant's failure to disclose its inclusion of prejudgment interest, in addition to principal, as part of the debt identified in the Collection Letter, violated the FDCPA's prohibition

---

[8] The docket sheet entry for October 14, 2011, reads "Request for order of dismissal," but does not indicate who filed the request.  *See* Cross-Motion Exh. 12 (ECF 37-12).  However, Young has indicated a belief that Thieblot Ryan filed the request.  *See* Plaintiff's First Request for Admissions ¶ 6 (ECF 37-4) ("Admit that . . . [Thieblot Ryan] filed a Request for Order of Dismissal . . . .").

against the "use [of] any false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C. § 1692e, including "[t]he false representation of . . . the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A). Am. Compl. ¶¶ 10-11, 17. Second, Young contends that because he did not owe the subject debt, defendant violated several provisions of 15 U.S.C. §§ 1692e & 1692f. In particular, he asserts that the Collection Letter and State Complaint constitute "[t]he false representation of . . . the character, amount, or legal status of any debt," 15 U.S.C. § 1692e(2)(A); "false or deceptive means to attempt to collect consumer debt," in violation of 15 U.S.C. § 1692e(10), Am. Compl. ¶¶ 18-22; and "unfair or unconscionable means of collecting consumer debt," in violation of 15 U.S.C. §1692f. Am. Compl. ¶ 21.

In moving for summary judgment, defendant contends that the claim premised on the Collection Letter's inclusion of prejudgment interest is barred by limitations. With regard to Young's remaining contentions, defendant relies on the defense of bona fide error, asserting that its reliance on BoA's representations in referring Young's account was reasonable under its standard procedure, and therefore precludes liability under the FDCPA. In his Cross-Motion, Young responds that the claims are timely, and that Thieblot Ryan's practices do not satisfy the standard for the bona fide error defense. Young also contends that Thieblot Ryan's failure to dismiss the State Complaint immediately after his federal complaint was filed, and failure to obtain verification from BoA as to the status of Young's account in a timely manner, precludes a bona fide error defense.

**Standard of Review**

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In resolving a summary judgment motion, a court must view all of the facts, including reasonable inferences to be drawn from them, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see also Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [its] pleadings,' but rather must 'set forth specific facts'" showing that there is a triable issue. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986). The "judge's function" in reviewing a motion for summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249. There is a dispute of material fact that precludes summary judgment "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

When, as here, the parties have filed cross motions for summary judgment, the court must consider "each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'" *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (citation omitted). "Both motions must be denied if the court finds that there is a genuine

issue of material fact. But if there is no genuine issue and one or the other party is entitled to prevail as a matter of law, the court will render judgment." 10A Wright, Miller & Kane, Federal Practice & Procedure § 2720, at 336–37 (3d ed. 1998, 2012 Supp.). As I see it, the material facts are not disputed.

### Discussion

The FDCPA is aimed at debt collectors who engage in abusive and deceptive debt collection practices. 15 U.S.C. § 1692a; *United States v. Nat'l Fin. Servs. Inc.*, 98 F.3d 131, 135 (4th Cir. 1996). To satisfy the threshold requirements for application of the FDCPA, the defendant must be a "debt collector," plaintiff must be a "consumer," and the "prohibited practices [must be] used in attempt to collect debt," as those terms are defined in 15 U.S.C. § 1692a. *See Heintz v. Jenkins*, 514 U.S. 291, 292-93 (1995); *Mabe v. G.C. Servs. Ltd. P'ship*, 32 F.3d 86, 87-8 (4th Cir. 1994). Plaintiff relies on the provisions of 15 U.S.C. § 1692e, which prohibit "the false representation of ... the character, amount, or legal status of any debt," and 15 U.S.C. § 1692f, which prohibits the "use [of] unfair or unconscionable means to collect or attempt to collect any debt."

Thieblot Ryan has not disputed that it is a debt collector, that Young is a consumer within the meaning of the FDCPA, or that the conduct complained of qualifies as debt collection activity. Nor does Thieblot Ryan dispute the conduct alleged by Young as the basis for his FDCPA claims. *See* Memo at 1-2 (adopting facts pled in Amended Complaint). And, Thieblot Ryan does not dispute plaintiff's arguments in his Cross-Motion that plaintiff has established a prima facie case. Rather, Thieblot Ryan has asserted two affirmative defenses. First, it argues that the claim must be dismissed because this suit was instituted more than one year after the

- 8 -

Collection Letter was mailed, and is thus outside the FDCPA's one-year statute of limitations, as

set forth in 15 U.S.C. § 1692k(d). Memo at 3-4. Second, it denies liability, arguing that it relied

upon the representation of Bank of America regarding the validity and amount of the debt, and is

therefore entitled to the FDCPA's bona fide error defense, as set forth in 15 U.S.C. § 1692k(c).

Memo at 4-5. Plaintiff's dispute as to the facts underlying Thieblot Ryan's affirmative defenses

is limited to a contention that the Collection Letter was not mailed on June 1, 2010. Cross-

Motion at 5. Although plaintiff also disputes the *applicability* of the bona fide error defense, he

does not dispute the *facts* proffered by defendant as to BoA's referral of the claim against

Young, but rather offers additional evidence that, he argues, precludes reliance on the bona fide

error defense. *Id.* at 12-15.

  *1. Statute of Limitations*

  As noted, plaintiff alleges that the undisclosed inclusion of prejudgment interest in the

Collection Letter violated the FDCPA. I agree with defendant that the claim was not timely

made.

  The FDCPA provides for a one-year statute of limitations, running from the date of the

alleged violation. 15 U.S.C. § 1692k(d) ("An action to enforce any liability created by this

subchapter may be brought in any appropriate United States district court without regard to the

amount in controversy, or in any other court of competent jurisdiction, within one year from the

date on which the violation occurs."). The calculation of the limitations period for a collection

letter begins on the date that the collection letter is placed in the mail, not the date it is received

by the consumer. *Akalwadi v. Risk Mgmt. Alts., Inc.*, 336 F. Supp. 2d 492, 501 (D. Md. 2004)

("Generally, the statute of limitations begins to run when a communication violating the FDCPA

is sent."); *see, e.g., Malloy v. Phillips*, 64 F.3d 607, 608 (11th Cir. 1995); *Mattson v. U.S. W. Commc'n Inc.*, 967 F.2d 259, 261 (8th Cir. 1992).  The rationale for this rule is that this is the last opportunity that a debt collector had to comply with the FDCPA.  *Naas v. Stolman*, 130 F.3d 892, 893 (9th Cir. 1997) (citing *Mattson*, 967 F.2d at 261).  And, the rule yields "a date which may be 'fixed by objective and visible standards,' one which is easy to determine, ascertainable by both parties, and may be easily applied."  *Mattson*, 967 F.2d at 261.

Based on my review of the documents filed in connection with the motions, the parties had agreed that the Collection Letter of May 30, 2010, was mailed on June 1, 2010.  *See supra*, n.5; Cross-Motion Exh. 4 (ECF 37-4) (showing letter postmarked June 1, 2010); *id.* ¶ 1 ("Admit that on or about May 30, 2010, Defendant wrote a letter and on June 1, 2010 mailed the letter to Mr. Young attempting to collect from him an alleged debt in the sum of $3,958.48."); Cross-Motion Exh. 6 (ECF 37-6) ("Defendant admits to the facts contained in paragraph 1 of Plaintiff's First Request for Admissions.").  Indeed, the Amended Complaint specifically alleges that the Collection Letter was sent on June 1, 2010.  Am. Compl. ¶ 12, and that date is further confirmed by the Miller Affidavit.  *See* Miller Aff. ¶ 10.  Although Young now attempts to retract his own averment, *see* Cross-Motion at 5 ("The true date that the letter was written and mailed remains a mystery."), ultimately he has offered nothing but speculation to counter the concrete evidence of a mailing date of June 1, 2010.  But, Young "'cannot create a genuine issue of material fact through mere speculation.'"  *Othentec Ltd. v. Phelan*, 526 F.3d 135, 140 (4th Cir. 2008) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)).

Because the evidence indisputably shows a mailing date of June 1, 2010, it is clear that that the Collection Letter was sent more than one year before the instant suit was filed on June 8,

2011. Accordingly, the FDCPA claim is untimely to the extent it is premised on the undisclosed inclusion of prejudgment interest in the debt identified by the Collection Letter.

Nonetheless, dismissal of the entire case, based on the statute of limitations, is not appropriate, because the Collection Letter "is not the only conduct of defendant about which plaintiff complains." *See* Memorandum of December 12, 2011, at 5 (ECF 16). As noted, the Complaint also alleges a violation of the FDCPA as a result of Thieblot Ryan's attempt to collect a debt that Young asserts was never owed.[9] Am. Compl. ¶¶ 18-22. Indeed, as discussed in my prior Memorandum denying defendant's motion to dismiss (ECF 16), that claim encompasses both the Collection Letter and the State court litigation initiated on July 20, 2010. Plaintiff filed his federal suit on June 8, 2011, within one year of the filing by defendant of the Maryland collection case. *See* ECF 16 at 5.[10]

---

[9] Plaintiff also asserts that, as "[d]efendant has failed as of this date to dismiss the state court law suit against the Plaintiff and has specific knowledge that the amount of debt they filed suit on is not owed their failure to dismiss the state court law suit has itself violated the FDCPA within the past 12 months." Am. Compl. ¶ 23. Because the lawsuit was filed in Maryland State court within the limitations period, I need not resolve this contention.

[10] I previously indicated that the filing of the Complaint was within the limitations period, and permitted plaintiff to proceed. *See* ECF 16 at 5. I will not revisit that decision now. Nevertheless, I note that another court in this District has declined to adopt the continuing violation theory in the context of the FDCPA. In *Fontell v. Hassett*, 870 F. Supp. 2d 395, 404 (D. Md. 2012), the court said:

Even if the management agent and its employees continued to send Plaintiff collection notices within the limitations period, Plaintiff had begun receiving such notices since 2006, yet did not bring a claim until more than four years later. Although each notice was undoubtedly unique in that Plaintiff's initial assessment continued to accrue late fees, the notices all related to collection of the same underlying debt. As a result, the Court finds that the limitations period began accruing in 2006 for claims based on the collection notices and in 2008 for claims relating to the lien, meaning that claims based on either are time-barred under the FDCPA.

Thus, insofar as Young claims that Thieblot Ryan misrepresented the existence of a debt owed to BoA, such a claim is timely. However, because the State Complaint does not claim any prejudgment interest as part of the alleged debt, a claim premised on Thieblot Ryan's failure to disclose the inclusion of prejudgment interest in the Collection Letter is barred by the applicable statute of limitations set forth in 15 U.S.C. § 1692k(d).

   2.   *Bona Fide Error Defense*

In the alternative, defendant relies, as it did in its motion to dismiss, on the FDCPA's bona fide error defense. Section 1692k(c) of 15 U.S.C. provides: "A debt collector may not be held liable . . . if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."

The bona fide error defense is an affirmative defense, for which the debt collector bears the burden of proof. *See Warren v. Sessoms & Rogers, P.A.*, 676 F.3d 365, 375 (4th Cir. 2012). Under the bona fide error defense, a debt collector cannot be held liable for attempting to collect a debt, so long as there is a "colorable factual basis" for a client's claim. *See McLean v. Ray*, No. 11-1544, 2012 WL 2899319, at *4-5 (4th Cir. July 17, 2012) (unpublished) (holding that lawyer could not be held liable under FDCPA for pursuing litigation to collect allegedly incorrect amount of debt where he relied on the file received from the creditor and saw no reason to question the facts provided); *Amond v. Brincefield, Hartnett & Assocs., P.C.*, 175 F.3d 1013,

_____

*See also Martin v. Sessoms & Rogers, P.A.*, No. 5:09-CV-480-D, 2010 WL 3200015, at *3-4 (E.D.N.C. Aug. 12, 2010) (finding claims time barred because initial communications concerning alleged debt were not timely, and sole timely communication was a "new communication concerning an old claim," and thus did not constitute a discrete FDCPA violation).

1999 WL 152555 (4th Cir. Mar. 22, 1999) (unpublished table decision) (holding that debt collector lawyers "cannot be held liable for what appears to be an honest dispute regarding the amount of the debt, so long as there exists a colorable factual basis for the higher amount claimed by their client").

In other words, "[t]he FDCPA does not require a debt collector to engage in an independent investigation of the debt referred for collection." *Sayyed v. Wolpoff & Abramson, LLP,* 773 F. Supp. 2d 635, 640 (D. Md. 2010) (citing *Jenkins v. Heintz,* 124 F.3d 824, 834 (7th Cir. 1997) (holding that a debt collector has no obligation to conduct an independent debt validity investigation) & *Elane v. Revenue Maximization Grp.,* 233 F. Supp. 2d 496, 500 (E.D.N.Y. 2002) (noting that defendant was entitled to rely on its client's representation that the debt was valid)). Thus, "a misrepresentation made by the debt collector solely as a result of inaccurate information provided by its client would be a bona fide error as defined under 15 U.S.C. § 1692k(c)." *Id.* (citing *Smith v. Transworld Sys., Inc.,* 953 F.2d 1025, 1032 (6th Cir. 1992) (holding the defendant reasonably relied on its client's calculation of the debt owed, and the resulting misrepresentation in a subsequent communication was a bona fide error)).

Whether a defendant is entitled to the bona fide error defense will almost always depend, as it does in this case, on fact-specific circumstances. *See Wilhelm v. Credico, Inc.,* 519 F.3d 416, 421 (8th Cir. 2008). For example, a debt collector may invoke the bona fide error defense when the debt it seeks to collect was verified through account statements furnished by the creditor. *See Long v. McMullen, Drury & Pinder, P.A.,* Civ. No. RDB-10-2276, 2011 WL 4458849, at *5-6 (D. Md. Sep. 23, 2011) (citing *Sayyed,* 773 F. Supp. 2d at 640) (dismissing FDCPA claim under bona fide error defense because defendant debt collector reasonably relied

on client's representations as to amount and status of alleged debt, and confirmed by documentation). Similarly, the defense may be invoked by a debt collector when the attempt to collect the debt is supported by "the underlying documentation from its client, as well as a sworn affidavit from its client stating that the records were accurate." *Sayyed*, 733 F.3d at 647.

On the other hand, in the face of a discoverable error, a debt collector cannot invoke the bona fide error defense solely on the ground that the creditor's submission of information concerning the debt to be collected had, in the past, been accurate. *See Reichert v. Nat'l Credit Sys., Inc.*, 531 F.3d 1002, 1005-07 (9th Cir. 2008) ("The fact that the creditor had provided accurate information in the past cannot, in and of itself, establish that reliance in the present case was reasonable and act as a reasonable substitute for the maintenance of adequate procedures to avoid future mistakes."). In other words, "[t]o qualify for the bona fide error defense under the FDCPA, the debt collector has an affirmative obligation to maintain procedures designed to avoid *discoverable errors*, including, but not limited to, errors in calculation and itemization." *Id.* at 1007 (emphasis added). Thus, in *Reichert*, the Ninth Circuit held that a debt collector's reliance on the creditor's inclusion of attorney's fees in the amount of debt alleged to be owed was not a bona fide error, because the debt collector's blind reliance on the creditor's calculations was not reasonable, where the error in those calculations was discoverable. *Id.*

In my view, defendant is entitled to protection based on the bona fide error defense. I explain below.

The defendant's procedures—and the defendant's application of such procedures in this case—are consistent with the procedures approved in prior cases where the claims appear proper on their face. *See Sayyed*, 733 F.3d at 647 (holding that reasonable reliance on creditor's

affidavit and underlying documentation permits bona fide error defense); *Long*, 2011 WL 4458849 at *5-6 (holding that reasonable reliance on creditor's documentation and representation as to debt permits bona fide error defense). The Miller Affidavit details the defendant's practices with regard to debt collection activity on behalf of BoA, and reveals that the practices were followed by Thieblot Ryan in pursuing the debt claim against Young. In particular, according to Miller, "[t]he firm does not file any complaints on behalf of Bank of America unless these complaints are supported by an affidavit from [BoA] attesting to the validity and amount of its claim." Miller Aff. ¶ 18. Further, Miller averred that "[i]t is the firm's policy and procedure to ensure the amount claimed in any complaint is the same as that of the affidavit in support of it," and that "[t]he firm maintains both a paper file and electronic history for all [of] Bank of America's accounts referred to it for collection." *Id.* ¶¶ 19-20.

In the file that BoA referred to Thieblot Ryan, BoA provided account statements reflecting the amount it claimed, and before Thieblot Ryan filed the State Complaint, BoA provided the Ferrer Affidavit to support the claim. Thus, the bank's claim was supported by a "colorable factual basis." *Amond*, 175 F.3d 1013, 1999 WL 152555 at * 3-4. Furthermore, the Ferrer affidavit and account statements were consistent. Notably, after Young received the Collection Letter, Young did not notify defendant of a dispute as to the validity or amount of the asserted debt. Indeed, the first time Young communicated to defendant his dispute as to the debt was when he filed the Complaint in this case. Put another way, before defendant filed the collection suit in State court, Thieblot Ryan had no basis to doubt the veracity or basis of the claim asserted by BoA, and there was no discoverable error which would preclude its reliance on BoA's referral.

Young contends that, by relying solely on the facts contained in its BoA's debt referrals, Thieblot Ryan has not demonstrated the existence of a reasonable error-avoiding procedure, akin to the blind reliance in *Riechert*. But, unlike the debt collector in *Riechert*, Thieblot Ryan was never put on notice that it could not or should not rely on the creditor's calculations. No documentation in the file suggested that the claim was not valid, nor did Young communicate a dispute over the validity of the debt. Thus, Thieblot Ryan was not on notice of a discoverable error. *See, e.g., Amond*, 1999 WL 152555 at *3-4 (rejecting "blind reliance" argument where debt collectors have a "colorable factual basis" for the claim, because "'[t]he [FDCPA] reads that debt collectors are not liable for attempting to collect validly certified amounts owed their client'") (quoting *Jenkins v. Heintz*, 124 F.3d 824, 833-34 (7th Cir. 1997)).

Young attempts to poke holes in Thieblot Ryan's argument by identifying several communications between BoA and Young of which Thieblot Ryan was not aware. *See* Cross-Motion at 13-14. For example, as an exhibit to his Cross-Motion, Young has attached copies of two returned checks, one for $2,560.00, dated March 5, 2010, and the other for $1,880.00, dated March 6, 2010, both payable to Young. *See* ECF 37-7. They were returned to Young on March 10 and March 12, 2010, respectively, as a result of suspected forgery or for lack of signature. *See id.* Young has also attached a document purporting to be a letter from Diana Silva of BoA "Check Fraud Claims," dated March 18, 2010, stating: "On 03/09/10, an item was negotiated against your Bank of America account noted above. The check was in the amount of $1,880.00 and was drawn by Antonio Calabra. This check has been returned unpaid for the following reason. Alleged maker's signature was forged. We have deducted the amount of the returned check from [Young's account]." *See* Cross-Motion, Exh. 8 (ECF 37-8). And, Young included a

letter dated May 25, 2010, also from Ashley Herring, crediting a different account in the amount of $1,850.00. *See* Cross-Motion, Exh. 9 (ECF 37-9).

In essence, Young argues that Thieblot Ryan's failure to consider or solicit these additional materials undermines the defendant's reliance on BoA's documentation. But, plaintiff does not explain why any of these documents should have been in Thieblot Ryan's file, nor is it obvious to me why BoA would have included the documents in its referral. The letter of March 18, 2010, regarding a check for $1,880, states that the amount was withdrawn from Young's account, which is consistent with his account statements included in the file referred to Thieblot Ryan, and therefore would have been wholly redundant. As to the other documents, I fail to see their relationship to the validity of the alleged debt. In particular, the two returned checks appear to be checks that Young tried to deposit, but were rejected for forgery or fraud; the May 25, 2010 fraud claim letter pertains to a separate account held by Young, and thus has no relevance, so far as I am aware, to whether he had overdrawn the account referred to Thieblot Ryan. Ultimately, Young has not identified any discrepancies in the file held by Thieblot Ryan that should have alerted defendant to a discoverable error in regard to BoA's claim.

As noted, "[t]he FDCPA does not require a debt collector to engage in an independent investigation of the debt referred for collection." *Sayyed*, 773 F. Supp. 2d at 640. In asserting that Thieblot Ryan lacked adequate procedures because *BoA* failed to include such documents in the referral file, Young would effectively require an independent investigation by the debt collector. Consequently, and for the reasons articulated above, I must reject Young's argument.

In a final foray, Young argues that Thieblot Ryan is liable under the FDCPA for failing voluntarily to dismiss the State Complaint as soon as Young initiated the instant suit. *See* Cross-

- 17 -

Motion at 8 (citing Am. Compl. ¶ 22). Young contends that, by filing his Complaint in federal court, he alerted Thieblot Ryan that he did not owe the debt. *See id.* at 7 (quoting Compl. ¶ 12 ("Attached hereto and incorporated herein as Exhibit 3 is a true and accurate copy of a letter the Plaintiff received from Bank of America, [d]ated May 25, 2010. That letter states that the amount claimed owed by the Defendant in its collection letter . . . and lawsuit is not owed.")). And, he contends that Thieblot Ryan's statement that, as of March 26, 2012 (approximately nine months after this case was initiated), it had not received information from BoA as to whether Young owed the alleged debt, demonstrates a lack of reasonable error-avoiding procedures. *See* Defendant's Response to Plaintiff's First Request for Admissions, Cross-Motion Exh. 6, ¶ 4 ("Defendant has made inquiry to Bank of America regarding [the May 25, 2010 letter], but, to date, has not received a response.").

This argument presupposes that the delay between Young's filing of the Complaint in this Court and the dismissal of the State Complaint constitutes a violation of the FDCPA. But, Young offers no support for this proposition. In my view, dismissal of the State Complaint in October 2010, four months after the federal suit was initiated, does not render Thieblot Ryan liable under such a theory. There is no allegation that Thieblot Ryan took any affirmative debt collection action following Young's filing of the federal complaint, and, in any event, such a theory has been consistently rejected elsewhere. *See, e.g., Naas v. Stolman*, 130 F.3d 892, 893 (9th Cir. 1997) (rejecting argument that violation of FDCPA occurred on day of decision by appellate state court in review of trial court debt collection suit, and holding that violation occurs with the initial filing of the debt collection complaint); *Schaffhauser v. Citibank (S.D.) N.A.*, 340 F. App'x 128, 131 (3d Cir. 2009) (per curiam) ("[Plaintiffs] offer no support for their contention

that participation in ongoing debt collection litigation qualifies as a 'continuing violation' of the FDCPA, and we are aware of none. Indeed, the only circuit court decision addressing this issue has concluded precisely the opposite.") (citing *Naas*, 130 F.3d at 893); *Ball v. Ocwen Loan Servicing, LLC*, 2012 WL 1745479, at *5 (N.D. Ohio May 16, 2012) (rejecting theory "that it was yet another violation for [the debt collector] to maintain the suit, or to request discovery during the litigation," and collecting cases).

Indeed, it is hardly clear how the May 25, 2010 letter crediting Young's account relates to the alleged debt: the purported credit is not reflected in any of the BoA account statements, and Young has not offered any evidence as to the source or authenticity of the letter or its relationship to his account activity. Put another way, the letter of May 25, 2010, does not, by its own terms, establish that BoA's claim was unsupported or invalid. Thus, I cannot agree that Thieblot Ryan was immediately obligated to dismiss the State Complaint.

Moreover, Young does not dispute that Thieblot Ryan inquired with BoA as to the validity of its claim in light of the letter of May 25, 2010. In my view, BoA's failure to respond in a timely manner does not render such an inquiry insufficient. Accordingly, the four-month period between Young's initiation of this suit and defendant's dismissal of the State Complaint did not constitute an independent violation of the FDCPA, nor does it preclude Thieblot Ryan from invoking the bona fide error defense.

## Conclusion

For the foregoing reasons, I will grant defendant's Motion for Summary Judgment (ECF 33). It follows that I must deny plaintiff's Cross-Motion for Summary Judgment (ECF 37). A separate Order consistent with this Memorandum follows.


Date: December 21, 2012                          _____/s/_____
                                                 Ellen Lipton Hollander
                                                 United States District Judge

- 20 -